IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NORMAN NOWLIN                                                                                    PLAINTIFF

v.                              Civil No. 5:23-cv-05060-TLB-CDC

KYLE SYLVESTER, Circuit
Clerk, Washington County                                                                         DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Norman Nowlin ("Nowlin"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis* ("IFP"). Nowlin contends the Defendant Circuit Court Clerk Kyle Sylvester ("Defendant Sylvester") violated his federal constitutional rights of access to the Courts by failing to provide transcripts and certified copies of certain documents from his state criminal case.[1]

The case is before the Court on Defendant Sylvester's Motion for Summary Judgment. (ECF Nos. 24-26). Nowlin has responded. (ECF No. 30). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making this Report and Recommendation.

**I.      BACKGROUND**

In *State v. Nowlin,* 72CR-09-1229A, Nowlin was charged with two counts of rape and two

---

[1] Nowlin's claim that he had a constitutional right to free transcripts was dismissed at the screening stage on the grounds Defendant Sylvester was entitled to quasi-judicial immunity and Eleventh Amendment immunity. Nowlin's claim for monetary damages was also dismissed based on Eleventh Amendment immunity. (ECF No. 17). This left for consideration Nowlin's claim for prospective injunctive relief.

1

counts of sexual assault in the second degree.[2]  Nowlin was accused of having engaged in sexual intercourse with his biological daughter. (ECF No. 26-1 at 5). On October 19, 2009, Nowlin plead guilty to one count of rape and one count of sexual assault in the second degree. *Id.* at 1-4.  He was sentenced to a term of imprisonment in the Arkansas Division of Correction of 360 months on the rape charge and 180 months on the sexual assault charge.  *Id.*  Nowlin did not file a direct appeal or pursue other post-conviction pleadings.[3]  *Id.* at 8.

On May 2, 2012, Nowlin filed an IFP motion, a petition for writ of error coram nobis, and a motion for a mental evaluation and competency hearing. (ECF No. 26-1 at 6-20). In the petition, Nowlin says he admitted the existence of the sexual relationship with his daughter because it had been consensual, and he believed himself "innocent of anything but simple incest.[4]" *Id.* at 8. Nowlin argued that "his guilty plea was not the product of a willing, knowing and voluntary[ily] entered negotiation, but was in fact coerced, as it came not from the Defendant ['] s will but that of his counsel []." *Id.* at 9.  Nowlin argued a great injustice would "ensure" if the court allowed his conviction and sentence to stand. *Id.*  He "denies he intended to commit any crime and swears he did not know his acts were crimes punishable by imprisonment.[5]" *Id.* Nowlin claims he was "a victim of unfair persuasion, undue influence and coercive tactics designed to achieve a specific

---

[2] The docket sheet is publicly available at Arkansas Case Information. https://caseinfo.arcourts.gov/opad/case/72CR-09-1229A (accessed March 26, 2024).

[3] In fact, in Arkansas except as provided for in Ark. R. Cr. P. 24.3 there shall be no right to appeal from a plea of guilty.  Ark. R. App. P. Cr. 1(a).  Rule 24.3(b) provides that conditional guilty pleas may be entered in three circumstances.  Ark. R. Cr. P. 24.3(b).  Nowlin did not enter a conditional plea.

[4] Nowlin referred to his daughter as his "Lolita" and described her as a "lascivious teenager."  He maintains he was no match for her.  (ECF No. 26-1 at 9).  Lolita is presumably a reference to a 1955 novel by that name authored by Vladimir Nabokov.

[5] Incest is a class C felony under Arkansas law and carries a term of imprisonment of not less than three years nor more than ten years.  Ark. Code Ann. §§ 5-26-202 & 5-4-401(a)(4).

goal; the guilty plea." *Id*. at 10. Nowlin also maintains he suffered from mental disease or defect as is evidenced by his actions in falling prey to his daughter's "[provocative] methods of obtaining her will." *Id*. He refers the court to Ark. Code Ann. § 5-26-202 which defines the crime of incest. *Id*.

Nowlin maintains his prior mental examination – ordered by the court pursuant to Ark. Code Ann. § 5-2-303 and performed by Ozark Guidance Center ("OGC") – was inadequate, not meaningful, and not effective. (ECF No. 26-1 at 11). Further, he contends his counsel was ineffective by failing to object to the determination of his fitness to proceed. *Id*. Nowlin states the entire examination took less than an hour and utilized no recognized testing procedure merely consisting of questions asked and a short dialogue. *Id*. at 12. Nowlin states he had a history of mental illness and further observation, and examination (as contemplated by statute) should have been ordered. *Id*. at 13.

Next, Nowlin argued his counsel was ineffective by pressuring him to plead guilty when he had repeatedly advised his attorney that he did not rape or sexually assault his daughter. (ECF No. 26-1 at 13). Because he had no other avenue for advice and believed his counsel would protect his interests, Nowlin states he was "susceptible to counsel[']s instructions. This le[]d to [Nowlin's] domination and by virtue of their relationship, counsel acted in a manner inconsistent with [Nowlin's] welfare." *Id*. at 13.

In his motion for a mental evaluation and competency hearing, Nowlin argued the court erred in accepting the report submitted by OGC "blindly without conducting a competency hearing and vital evidence in support of [Nowlin's] lack of fitness to proceed went ignored by the court." (ECF No. 26-1 at 17). Nowlin argued the Constitution prohibited the conviction of a mentally

3

incompetent defendant and due process required a hearing anytime evidence raises doubt about the mental competence of the accused. *Id.* at 17-18. Nowlin says the court should have considered the following factors: (1) Nowlin was medicated with a powerful sleeping medication combined with alcohol when questioned by the police; and (2) the victim was an "extremely sexually active and lascivious teenager and had been for years prior to the incident." *Id.* at 18. Nowlin claimed not to be sane at the time of the incident. *Id.* In his motion, Nowlin admitted that any petition under Rule 37.1 of the Arkansas Rules of Criminal Procedure would be barred as untimely. *Id.* at 19. On May 21, 2012, Circuit Judge William A. Storey denied the petition for error coram nobis and post-conviction motion for a mental evaluation and competency hearing. *Id.* at 21. Judge Storey explained his reasoning in a letter to Nowlin dated the same date. *Id.* at 22. With respect to the forensic examination, Judge Storey stated that if the examination and results were flawed, the issue should have been raised prior to entry of the guilty plea. *Id.* To the extent Nowlin was asserting ineffective assistance of counsel, Judge Storey indicated that the issue should have been raised in a Rule 37.1 motion and was then untimely. *Id.* Nowlin filed a notice of appeal from this decision on June 26, 2012. (ECF No. 26-1 at 23). On September 10, 2012, an order was filed which denied Nowlin's petition to obtain the record on appeal as a pauper. (ECF No. 26-1 at 25).

On July 12, 2019, Nowlin filed a Rule 37 petition. *Id.* at 26. That same day, he filed a motion for transcripts. *Id.* at 32. On July 12, 2019, Circuit Judge Mark Lindsay denied the Rule 37 petition and motion for transcripts as untimely filed. *Id.* at 34.

On September 3, 2019, a letter from Nowlin to the court clerk dated August 24, 2019, was filed in which Nowlin requested verification that his Rule 37 petition and motion to proceed IFP

4

had been received or filed.  (ECF No. 26-1 at 35).  Nowlin also asked for certified copies of the original criminal information, probable cause affidavit, and the sentencing order.  *Id.*

On January 23, 2020, a motion for leave to proceed IFP was filed.  *Id.* at 37.  Nowlin indicated his desire to file a petition for judicial review under the Administrative Procedures Act.  *Id.*  That same day, the motion was granted.  *Id.* at 39.  The order stated that the "Clerk shall receive and file any necessary forms or pleadings incident to petitioner's action without requirement of the payment of fees or costs."  *Id.*  Nowlin filed a motion for a transcript at public expense and a motion for discovery.  *Id.* at 52 & 56.

On January 23, 2020, Nowlin filed a second petition for writ of error coram nobis.  (ECF No. 26-1 at 40).  In this petition, Nowlin argued there was a procedural gap between state post-conviction procedures and the filing of a habeas corpus petition in federal court.  *Id.* at 43.  Once a defendant has either exhausted Rule 37 proceedings or been procedurally barred from utilizing Rule 37, and constitutional error still exists, such as actual innocence, there are no available remedies left except for coram nobis which has no time limit on its filing.  *Id.*

Nowlin first argued that his guilty plea could not have been knowing and voluntary if he did not receive reasonably effective assistance of counsel. (ECF No. 26-1 at 45). Nowlin indicates he was never informed that to prevail at trial the State would have to prove he acted with a depraved mind.  *Id.* at 46.  Second, Nowlin argued that violation of the Sixth Amendment right to the assistance of counsel could provide grounds for post-conviction relief.  *Id.*  Here, Nowlin argued defense counsel failed to point out:

> all the discrepancies in the discovery such as the six (6) entirely different statements of events by the victim on the day of the allege[d] rape, the fact the investigating detective stat[ed] that he believed the victim statements to have been trained, or the fact that 15 minutes after the alleged rape the victim went to the emergency

5

> department (hospital) where a rape kit was p[er]formed by medical personnel and it showed no signs of rape meaning there [were] no signs of sexual intercourse or any deviate sexual activity.

*Id.* at 48. With respect to the requirement that he act with due diligence in filing a writ of coram nobis, Nowlin says he was unaware the victim changed her testimony multiple times or that she was seen at a hospital and the rape kit was negative. *Id.* at 50. Nowlin alleges it also showed she had never been subjected to forced intercourse. *Id.* Furthermore, Nowlin states he has a history of mental disorder and could not understand at the time that he signed that he could have taken the charge to a jury trial at which he is convinced no reasonable jury could have found him guilty of the crimes charged. *Id.*

On January 24, 2020, the Court denied the petition for writ of error coram nobis, the motion for discovery, and the motion for transcripts. (ECF No. 26-1 at 59-60). The Court found that Nowlin's plea was knowingly and intelligently made, and that he was fully informed of the nature of and punishment for the charges. *Id.* at 59. It was noted he testified under oath to the elements of the crimes and his "willingness to plead guilty as a fully informed person." *Id.* The court indicated Nowlin had previously made the same allegations and relief was denied by order entered May 21, 2012. *Id.*

In May and June 2020, letters from the Criminal Justice Coordinator for the Arkansas Supreme Court indicate Nowlin attempted to tender a petition for writ of mandamus to compel the Circuit Clerk of Washington County to take certain action. (ECF No. 26-1 at 61& 63). The petition was returned to him as it did not "comport with the prevailing rules of legal procedure." *Id.* Nowlin was advised he needed to proceed in circuit court with an appropriate pleading. *Id.*

On July 1, 2020, Nowlin filed a petition for leave to proceed IFP. (ECF No. 26-1 at 65).

The request was granted the same day. *Id.* at 67. On October 20, 2022, Nowlin filed a motion for transcripts and a motion for discovery. *Id.* at 68-72 & 75-79.

In December of 2022, Nowlin attempted to file a petition for a writ of mandamus with the Arkansas Supreme Court. (ECF No. 26-1 at 82-83). The Criminal Justice Coordinator for the Arkansas Supreme Court noted that the criminal docket illustrated Nowlin had filed a motion for transcripts and a motion for discovery on October 20, 2022. *Id.; see also* (ECF No. 30-1 at 34 & 36). However, copies of these documents tendered by Nowlin to the Arkansas Supreme Court were not certified. (ECF No. 26-1 at 83-83). Nowlin says he was informed his petition would be filed when he provided a certified copy of (1) the judgment, (2) the motion for discovery, and (3) the motion for transcripts. *Id.* Nowlin states he wrote the Circuit Court and requested certified documents and enclosed a copy of the letter from the Criminal Justice Coordinator. (ECF No. 12 at 6). The motions for discovery and for transcripts were denied by order entered on January 11, 2023. (ECF No. 26-1 at 84-85).

On February 9, 2023, Nowlin filed a document entitled "caveat." (ECF No. 26-1 at 86-102). The caveat was filed against Circuit Judge Mark Lindsay and Defendant Sylvester. (ECF No. 12 at 6). The caveat gave the defendants thirty days to respond on a "point for point basis." *Id.* at 87. When the thirty days passed with no response, Nowlin sent the "a second notice granting them (30) additional days to respond to the caveat." (ECF No. 12 at 6). Nowlin says he has received no response. *Id.* By affidavit, Defendant Sylvester indicates he has "searched the record in Case No. CR09-1229-1 and the record is devoid of a request for certified copies of the "motion for transcripts, the motion for discovery, and the judgment." (ECF No. 26-1 at 103).

## II.	LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.	DISCUSSION

Defendant Sylvester has moved for summary judgment advancing the following arguments: (1) Nowlin never submitted a request for certified copies to Defendant Sylvester: (2)

Even if Nowlin submitted a request for certified copies, he does not have a non-frivolous legal claim for a denial of access to the courts claim; (3) any writ of mandamus is moot; and (4) Nowlin has not and cannot exhaust his state law remedies.

### A.  Request for Certified Copies

Defendant Sylvester maintains Nowlin made no request for certified copies regarding the motion for discovery and the motion for transcripts filed on October 20, 2022, or the judgment as referenced in the December 2022 letters from the Criminal Justice Coordinator. In the brief filed on Sylvester's behalf, it is somewhat grudgingly conceded that certified copies of documents were requested on September 3, 2019; however, Defendant Sylvester argues Nowlin did not remit the fee for certified copies, ask that the fee be waived, or provide any reason for his failure to remit the fee.[6] (ECF No. 25 at 3). Without proof that a request was made for free certified copies, Defendant Sylvester contends Nowlin cannot prevail on his claim.

The Court agrees the record in Nowlin's criminal case does not appear to include a request for free certified copies of the motion for discovery or the motion for transcripts filed in October of 2022, or of the judgment after the Criminal Justice Coordinator refused to file Nowlin's petition for writ of mandamus. Nevertheless, Nowlin maintains he did write to Defendant Sylvester requesting the certified copies of the documents and enclosed the letter from the Criminal Justice Coordinator.  This remains a question of fact.

---

[6] In Defendant Sylvester's affidavit he does not mention the file-marked letter of September 3, 2019, which clearly requested a certified copy of the judgment.  Instead, he merely asserts the "record is devoid of a request for certified copies of: the motion for transcripts, the motion for discovery, and the judgment."  (ECF No. 26-1 at 103).  The filed marked certified letter is only referenced by defense counsel in the summary judgment motion.

### B. Nonfrivolous Legal Claim

"The right of access to the courts . . . is founded on the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974). In *Christopher v. Harbury,* 536 U.S. 403, 413 (2002), the Court recognized two general types of denial-of-access claims. The first type "are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* The justification for recognizing this type of claim "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* The second type "covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried will all material evidence), no matter what official action may be in the future." *Id.* at 413-14. This type of case does not:

> look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.  The ultimate object . . . is not judgment in a further lawsuit, but simply judgment in the access claim itself, in providing relief obtainable in no other suit in the future.

*Id.* at 414.   The Court went on to note that "the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher,* 536 U.S. at 414-15.   The Court cautioned, however, that the right "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  *Id.* at 415 (citing *Lewis v. Casey,* 528 U.S. 343 (1996)).   In *Lewis*, the Court had made clear there was

an actual injury requirement for any court access claim finding a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis,* 528 U.S. at 351-353. In *Christopher,* the Court said the "predicate claim" must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable nature of the underlying claim is more than hope." 536 U.S. at 416.

In this case, there are two underlying legal claims which Nowlin maintains Defendant Sylvester interfered with: (1) the filing of petition for writ of mandamus; and (2) the filing of a habeas corpus action to assert an actual innocence claim.

### 1. Writ of Mandamus

Defendant Sylvester points out that Nowlin attempted to file the writ of mandamus to force Judge Lindsay to rule on his motions for transcripts and discovery. Because Judge Lindsay denied the motions for transcripts and discovery on January 11, 2023, and there are no other pending motions in the state criminal case, Defendant Sylvester argues this claim is moot and cannot constitute an actual injury. Nowlin responds that Defendant Sylvester in fact blocked him from moving forward in the Arkansas Supreme Court.

The Court agrees that the writ became moot when the state court ruled on the pending motions. *Dalton v. JJSC Properties, LLC,* 967 F.3d 909, 913 (8th Cir. 2020) ("A claim is moot when changed circumstances already provide the requested relief and eliminate the need for court action") (internal quotation marks and citation omitted). Nowlin's claim for damages has been dismissed and prospective injunctive relief is unavailable to remedy past constitutional violations. *Frost v. Sioux City, Iowa,* 920 F.3d 1158, 1162 (8th Cir. 2019). However, prospective injunctive relief is available if Nowlin has alleged facts suggesting he faces "a real and immediate threat that

[he] would again suffer similar injury in the future." *Id.*

As discussed, Nowlin maintains he needs these records to pursue postconviction relief. In Arkansas, a criminal defendant is entitled to a free copy of a transcript only if he establishes some reasonably compelling need. *Henderson v. State,* 699 S.W.2d 397, 397-98 (Ark. 1985). "The mere fact of indigency does not entitle a petitioner to a free transcript for the purpose of searching the record in an attempt to find support for allegations" in a postconviction motion. *Id.* at 398. "Even if a petitioner cites allegations, he intends to raise in a petition for postconviction relief, he is not entitled to a copy of the trial record at public expense unless he demonstrates some reasonably compelling need for specific documentary evidence to support the allegations" in a timely filed petition for postconviction relief. *Austin v. State,* 697 S.W.2d 914, 916 (Ark. 1985); *Bradshaw v. State,* 275 S.W.3d 173, 174 (Ark. 2008).

Nowlin's writ of mandamus action sought only to compel the Court to rule on his motions. Even if granted by the Arkansas Supreme Court, this would not necessarily grant Nowlin a right to a free copy of transcripts, or a right to conduct discovery as demonstrated by the Circuit Court's ruling on Nowlin's motions. The writ became moot in January of 2023, shortly after Nowlin's December of 2022 request for certified copies, and the Court agrees that any delay in the proceeding occasioned by Defendant Sylvester's conduct does not establish actual injury within the meaning of a denial of access to the courts claim and cannot form the basis for any prospective injunctive relief.

Defendant Sylvester is entitled to summary judgment on the denial of access to the courts claim to the extent Nowlin relies on the writ of mandamus to satisfy the actual injury requirement. This does not end the Court's inquiry, however, because Nowlin also maintains Defendant

Sylvester's actions kept him from being able to file a federal writ of habeas corpus under 28 U.S.C. § 2254.

### 2. Writ of Habeas Corpus

Defendant Sylvester argues Nowlin has suffered no injury because he does not meet the standing requirement for filing a habeas petition. Defendant Sylvester maintains Nowlin did not exhaust his state administrative remedies and has provided no reason why his failure to timely appeal should be excused. Because Nowlin does not have a viable claim for a habeas petition, Defendant Sylvester argues Nowlin does not have a nonfrivolous (and arguably meritorious) underlying legal claim to support a denial of access to the courts claim.

Nowlin maintains that the requested documents are necessary to the filing of his petition and to support his actual innocence argument. He questions why Defendant Sylvester has fought so hard to keep the documents out of his possession causing him to file this § 1983 lawsuit. Nowlin says to be able to establish that he should be excused from procedural default based on cause and prejudice or actual innocence he must have proof in the form of the transcripts and discovery to establish this.

Article III, Section 2 of the United States Constitution limits federal jurisdiction to actual cases and controversies. Art. III, § 2 U.S. Const. A court lacks subject matter jurisdiction if Plaintiff lacks standing to sue or if a claim becomes moot. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). A plaintiff's standing to sue "requires (1) an 'injury in fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Dalton v. JJSC Properties, LLC,* 967 F.3d 909, 912-13 (8th Cir. 2020). The "irreducible constitutional minimum of standing" includes the requirement that

the injury complained of by the litigant "be likely, as opposed to merely speculative." *Lujan,* 504 U.S. at 560-1.

"[T]he writ of habeas corpus [is] of fundamental importance in our constitutional scheme, and '[s]ince the basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed.'" *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974) (quoting *Johnson v. Avery,* 393 U.S. 483, 485 (1969)). Nowlin's initial and significant hurdle in his attempt to have his habeas petition heard is the one-year time limitation for filing a habeas petition set forth in 28 U.S.C. § 2244(d)(1). His second hurdle is his failure to exhaust his state postconviction remedies. "[A] state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Gordon v. Arkansas,* 823 F.3d 1188, 1196 (8th Cir. 2016) (internal quotation marks and citation omitted). The fundamental miscarriage of justice or actual innocence exception, "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons. *Herrera v. Collins,* 506 U.S. 390, 404 (1993) (citation omitted). Actual innocence, however, "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* To establish that his actual innocence, "a petitioner must present new reliable evidence that he was innocent of the crime of which he was convicted." *Storey v. Roper,* 603 F.3d 507, 524 (8th Cir. 2010) (citing *House v. Bell,* 547 U.S. 518, 537 (2006)).

The issues of whether Nowlin will be able to establish his habeas corpus petition is timely

filed or if he can establish cause or prejudice or actual innocence to avoid the procedural bar of failure to exhaust administrative remedies are not before this Court; these decisions can only be made once a habeas petition is filed. The Court cannot say as a matter of law that such a petition would be barred and therefore not arguably meritorious for the purposes of determining whether actual injury exists in the context of an access to the courts claim.

Rather, the issue is whether Defendant Sylvester's actions prevented or hindered Nowlin from filing of a potentially meritorious habeas petition. The Court finds Defendant Sylvester's actions did not prevent Nowlin from filing the habeas petition. There is no requirement in the rules governing habeas corpus cases or in 28 U.S.C. § 2254 requiring the petitioner to file a certified copy of the state record. Rule 2(c) requires the petition to: "(1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury." Sect. 2254 Rule 2. Nothing prevented Nowlin from filing his petition and setting forth the reasons he believed his claims were either timely or survived procedural bars. If his petition passed preliminary review under Rule 4, and a response was ordered, Rule 5 requires the State to attach to its response parts of the relevant transcripts. *See* Sect. 2254 Rules 4-5.

As a result, Defendant Sylvester is entitled to summary judgment on this claim.

### IV. CONCLUSION

For these reasons, it is recommended that Defendant Sylvester's Motion for Summary Judgment (ECF No. 24) be **GRANTED, and this case DISMISSED WITH PREJUDICE.**

**Status of the Referral: The referral terminates upon the filing of this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**RECOMMENDED** this 3rd day of April 2024.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE